UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SERGIO PADILLA,<br><br>Defendant. | No. 1:06-cr-00059-JLT<br><br>ORDER DENYING WITHOUT PREJUDICE DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE<br><br>(Docs. 734, 740, 746) |

Sergio Padilla moves the Court for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (Docs. 734, 740.) Padilla, along with the supplemental filing by his court-appointed attorney (Doc. 746), argues that extraordinary and compelling reasons exist for relief due to the spread of the COVID-19 virus, as well as substantial changes to sentencing law in the last few years. Specifically, Padilla argues that with the passage of the First Step Act, his prior drug conviction no longer triggers the enhanced mandatory minimum that applied under the previous regime. The government opposes the motion. (Doc. 753). For the reasons explained below, Padilla's motion is DENIED.

## BACKGROUND

On October 27, 2009, Padilla pled guilty to Counts One and Four of the indictment: Conspiracy to Distribute and to Possess with the Intent to Distribute Cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846, and Conspiracy to Conduct Financial Transactions

Involving the Proceeds of Specified Unlawful Activity and Aiding and Abetting, in violation of 18 U.S.C. §§ 1965(a)(1)(B)(i), 1956(h), 1957, and 2. (Doc. 516.) The government sought enhanced sentencing due to Padilla's prior felony drug offense, a 1990 conviction for possession for sale of a narcotic in Merced County, California. Although Padilla only served eight months in jail for this prior drug offense, it triggered an enhanced mandatory minimum of 20 years for the Count One in this case. (*See* Doc. 746-1.)

After considering the quantity of drugs involved, Padilla's leadership role in the drug trafficking organization, and his acceptance of responsibility, Padilla's total offense level was calculated as a level 39 with a criminal history category I. This resulted in a sentencing guideline range of 262–327 months for Count One. Probation recommended a downward variance to the 240-month mandatory minimum, (*see* Doc. 552 at 2–3), but Judge Oliver W. Wanger ultimately sentenced Padilla to 262 months for Count One and 240 months for Count Four, to run concurrently. (Doc. 564.)

Padilla's sentence on Count One was reduced via stipulation after Amendment 782 retroactively revised the Drug Quantity Table and chemical quantity tables across drug and chemical types by two offense levels. *See* Amendment 782; USSG, sup. App'x C, amend. 788 (2014); *United States v. Navarro*, 800 F.3d 1104, 1107 (9th Cir. 2015). The amendment lowered Padilla's guidelines range from 262–327 months to 240–262 months, with the enhanced mandatory minimum of 240 months still in effect.[1] Per the stipulation, Padilla's sentence on Count One was reduced to 240 months. (Doc. 711.)

Padilla is serving the remainder of his sentence at CI North Lake and is scheduled for release on February 27, 2023. *Find an inmate*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited April 14, 2022). He has thus far been incarcerated for just over 16 years.

**LEGAL STANDARD**

A court generally "may not modify a term of imprisonment once it has been imposed." 18

---

[1] Without the enhancement, the low-end of the guidelines range would have been 210 months. (Doc. 753 at 4, n.1.)

U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances."). Those limited circumstances include compassionate release in extraordinary cases. *See United States v. Holden*, 452 F. Supp. 3d 964, 968 (D. Or. 2020). Under the First Step Act of 2018 ("the FSA") imprisoned defendants may bring their own motions for compassionate release in the district court. 18 U.S.C. § 3582(c)(1)(A) (2018). In this regard, the FSA specifically provides that a court may

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[2] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).

The policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons."

---

[2] If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the Regional Director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13;[3] *see also United States v. Gonzalez*, 451 F. Supp. 3d 1194, 1197 (E.D. Wash. 2020) (noting that courts "universally" rely on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized defendants to file compassionate release motions). However, the Ninth Circuit has held "that the current version of U.S.S.G. §1B1.13 is not an 'applicable policy statement[ ]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). "In other words, the Sentencing Commission has not yet issued a policy statement 'applicable' to § 3582(c)(1)(A) motions filed by a defendant." *Id.* The Ninth Circuit clarified that "[t]he Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Id.* (citing *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020)).

In the past, when moving for relief under 18 U.S.C. § 3582(c), courts recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted. *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998). Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate brought pursuant to § 3582(c) as amended by the FSA, district courts have agreed that the burden remains with the defendant. *See, e.g.*, *United States v. Mathews*, No. 2:15-CR-00118-KJM, 2021 WL 3883735, at *3 (E.D. Cal. Aug. 31, 2021); *United States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, at *3 (W.D. Wash. May 7, 2020).

## ANALYSIS

To qualify for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), a court must consider three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Second, a district court may grant compassionate release only if "extraordinary

---

[3] The Sentencing Guidelines also require that to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

4

>and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id.* Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable." *Id.*

*United States v. Rodriguez*, 424 F. Supp. 3d 674, 680 (C.D. Cal. 2019); *see also United States v. Ramirez-Suarez*, 16-CR-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *Parker*, 461 F. Supp. 3d at 973–74; *United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be "consistent with" the sentencing factors set forth in §3553(a)).

### A.   Administrative Exhaustion

Pursuant to 18 U.S.C. § 3582(c)(1), an inmate may only file a motion for sentence reduction after the Bureau of Prisons denied his request or after 30 days have passed since BOP received his request. On February 24, 2021 and September 15, 2021, Padilla submitted requests for compassionate release to the Warden. (Docs. 746 at 3; 746-3.) The Warden denied both of Padilla's requests. *Id*. Thus, Padilla has satisfied the exhaustion requirement.

### B.   Extraordinary and Compelling Reasons

Padilla argues that both the COVID-19 pandemic and revisions to sentencing law in 2018 establish "extraordinary and compelling" reasons for a sentence reduction and early release under § 3582.

####   1.   COVID-19 Risk

Padilla's motion and supplement briefly discuss his multiple health conditions. (Doc. 746 at 10–11.) A defendant's medical conditions may constitute "extraordinary and compelling" reasons warranting compassionate release, as may his age and other related factors, family circumstances, or "other reasons." U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D).[4]

Medical conditions may be "extraordinary and compelling" where the defendant "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life

---

[4] Even though the catch-all of "other reasons" was included in the policy statement at a time when only BOP could bring a compassionate release motion, courts have agreed that it may be relied upon by defendants bringing their own motions under the FSA. *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases).

5

trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required." U.S.S.G. § 1B1.13, cmt. n.1 (A)(i). Non-exhaustive examples of terminal illnesses that may warrant a compassionate release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id.* In addition to terminal illnesses, a defendant's debilitating physical or mental condition may warrant compassionate release when the defendant is:

> (I)   suffering from a serious physical or medical condition,
>
> (II)  suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* at cmt. n.1 (A)(ii).

BOP records confirm that Padilla is 54 years old and suffers from several health issues, including two titanium rods in his legs that cause chronic pain, dental issues, and low HDL cholesterol, which places Padilla at a greater risk of developing heart disease. (*See* Doc. 749.) Padilla does not argue that any of these health issues substantially diminish his ability to provide self-care. Nor does he argue that these conditions make him uniquely vulnerable to complications if he were to contract COVID-19. (Doc. 746 at 11–12.)

Instead, Padilla appears to argue that the general risk of COVID-19 alone is extraordinary and compelling; the law dictates otherwise. General concerns about possible exposure to COVID-19 do not constitute extraordinary and compelling reasons for relief under § 3582. *United States v. Eberhart*, 448 F.Supp.3d 1086, 1090, (N.D. Cal. Mar. 25, 2020). This is especially true with respect to Padilla, because he received the Johnson & Johnson COVID-19 vaccine. (Doc. 746 at 11.) While the COVID-19 vaccines may not provide absolute protection against all infections, the evidence so far shows that they do provide significant protection against severe illness and death resulting from the coronavirus. *See, e.g.*, *United States v. Smith*, 538 F.Supp.3d 990, 1000 (E.D. Cal. 2021) ("[D]istrict courts across the country, including within this

Circuit, have held almost uniformly that a defendant's vaccination undercuts any claims of 'extraordinary and compelling reasons' based on a high risk of infection."); *see also United States v. Meyers*, No. 12-CR-00248-PJH-3, 2022 WL 602518, at *3 (N.D. Cal. Mar. 1, 2022); *United States v. Meza-Orozco*, 2021 WL 3630519 (W.D. Wash. Aug. 17, 2021) ("The Court understands that the science is still evolving as to vaccine efficacy. . . but it appears conclusively established that fully vaccinated individuals are reasonably protected from hospitalization and death."); *Science Brief: COVID-19 Vaccines and Vaccination*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/fully-vaccinated-people.html (last visited April 16, 2022). Further, Padilla has made no argument that his underlying conditions are not being properly treated or managed in CI North Lake. Therefore, Padilla has not demonstrated that his medical conditions or risk of contracting COVID-19 constitute an "extraordinary and compelling" circumstance.

    2.    <u>Changes in the Law</u>

Padilla next argues that the Court should grant his motion because changes in the First Step Act created an extraordinary and compelling disparity between Padilla's sentence and the guidelines applicable for similar conduct today. (Doc. 746 at 6.) The 2018 FSA "limited mandatory minimum enhancement based on prior drug convictions along two axes—the length of the mandatory minimums and the range of offenses that trigger mandatory minimums in the first instance." *United States v. Lii*, 528 F. Supp. 3d 1153, 1160 (D. Haw. 2021). Relevant to Padilla's case, the FSA reduced the enhanced mandatory minimum for one prior felony drug conviction from 20 years to 15 years and changed the type of drug conviction that triggers the enhancement.

Prior to 2018, anyone who had a prior "felony drug offense," such as Padilla's 1990 narcotics conviction, was subject to an enhanced mandatory minimum for a subsequent violation of 21 U.S.C. § 841(b)(1)(A). *See* 21 U.S.C. § 802(44). Defendants sentenced after the First Step Act, however, are not subject to an enhanced mandatory minimum sentence unless they have prior convictions for one or more "serious drug felon[ies]," as defined in 21 U.S.C. § 802(57) and 18 U.S.C. § 924(e)(2). *See* 21 U.S.C. § 841(b)(1)(A).

7

Among other things, a drug felony is only "serious" if the defendant actually served more than one year of imprisonment for the violation. 18 U.S.C. § 924(e)(2); *Lii*, 528 F. Supp. 3d 1153, 1161 (D. Haw. 2021). The parties agree that because Padilla only served an 8-month term for his 1990 conviction, it would not qualify as a predicate offense requiring an enhanced mandatory minimum under the First Step Act. (Doc. 753 at 10, n.3.) Padilla argues that if he were sentenced today, under the FSA and without the enhancement, he would receive only 120 months for Count One. (Doc. 746 at 7, citing 21 U.S.C. § 841(b)(1)(A).

The government appears to agree that if Padilla had been sentenced after 2018, he would be subject to only a 10-year mandatory minimum for the drug count. (Doc. 753 at 1.) However, it opposes Padilla's motion on the grounds that that Padilla is not entitled to the benefits of the FSA's revisions because the FSA was not made retroactive. (*Id.* at 10.) There is a split of authority on this question. Some courts express concern that granting a motion for sentence reduction under § 3582(c)(1)(A) based on the FSA's sentencing revisions would "supplant the retroactivity determination of courts . . . for the retroactivity determination of Congress." *United States v. Andrews*, 480 F.Supp.3d 669 (E.D. Pa. 2020); *accord*, *e.g.*, *United States v. Fulcher*, No. 98-0119, 2020 WL 4547970, *2 (S.D. Ind. Aug. 5, 2020) ("If Congress intended to authorize courts to exercise discretion to apply [the First Step Act] retroactively to otherwise ineligible defendants, it would have included that amendment. . . [The defendant] may not use 18 U.S.C. § 3582(c)(1)(A)(i)'s 'extraordinary and compelling' provision as an end-around to achieve a result that Congress did not intend.")

Other courts, including many in California and in this district, have rejected this reasoning on the grounds that the statute's lack of retroactivity "does not prohibit the court from considering this legislative change in deciding whether to reduce [a defendant's] sentence." *United States v. Parker*, No. 2:97-cr-202-TLN-EFP, 2021 WL 1966409 at *3 (E.D. Cal. May 17, 2021) (collecting cases); *see also Smith*, 538 F.Supp.3d at 1000. As the Fourth Circuit explained in *United States v. McCoy*, "there is a significant difference between automatic vacatur and resentencing of an entire class of sentences—with its 'avalanche of applications and inevitable resentencings'—and allowing for the provision of individual relief in the most grievous cases."

8

981 F.3d 271, 286–87 (4th Cir. 2020) (quoting *United States v. Haynes*, 456 F. Supp. 3d 496, 516 (E.D.N.Y. 2020)). "[T]he very purpose of § 3582(c)(1)(A) is to provide a 'safety valve' that allows for sentence reductions when there is not a specific statute that already affords relief but 'extraordinary and compelling reasons' nevertheless justify a reduction." *Id.* at 287 (emphasis in original). The Court is persuaded by this reasoning and joins those other district courts in finding that the enactment of the First Step Act and its sentencing reforms may constitute an extraordinary and compelling reason that warrants the granting of compassionate release in some particular cases.

In evaluating each case for compassionate release, courts have considered, among other things, the total sentencing disparity, the defendant's age at present and at the time of conviction, evidence of rehabilitation, and the percentage of the original sentence that a defendant has already served. *See United States v. Defendant(s)*, 2020 WL 1864906, at *5 (C.D. Cal. Apr. 13, 2020); *Smith*, 538 F. Supp. 3d at 999–1001 (E.D. Cal. 2021); *United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *5 (D. Utah Feb. 18, 2020), *aff'd*, 993 F.3d 821 (10th Cir. 2021).

The parties agree that Padilla, now 54 years old, has served more than 90% of his statutory term. The government also does not contest evidence of Padilla's rehabilitation. Padilla has consistently worked and pursued education throughout his 16 years in prison, and he has not incurred a single disciplinary infraction in that time. These collective factors, along with the fact that the mandatory minimum sentence for Padilla's Count One conduct has been halved by the FSA, weigh in favor of relief. *See United States v. McGee*, No. 12-CR-00052-EMC-1, 2021 WL 1660251 (N.D. Cal. Apr. 26, 2021) (granting sentence reduction under similar circumstances).

However, reducing Padilla's sentence for Count One would ultimately have no impact on his term of imprisonment. When Padilla pled guilty, he did so on two counts of the third-superseding indictment. For Count One, the drug count, he was originally sentenced to 262 months, which was reduced to 240 months in 2016. (Docs. 564, 713.) This sentence was to run *concurrently* with Padilla's 240-month sentence on Count Four, Conspiracy to Conduct Financial Transactions Involving the Proceeds of Specified Unlawful Activity. (Doc. 564.) Padilla has

9

made no argument that the 240-month sentenced imposed for Count Four is improper or should be reduced.  Under these circumstances, Padilla has not established extraordinary and compelling reasons warranting relief.  Accordingly, because the Court cannot afford Padilla any relief, his motion for compassionate release (Docs. 734, 740, 746) is DENIED without prejudice.

IT IS SO ORDERED.

Dated:  **April 21, 2022**

UNITED STATES DISTRICT JUDGE